UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JANELLE J., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-528-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Janelle J. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 9. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on August 19, 2019, alleging disability beginning December 5, 2016 (the disability onset date), due to a variety of physical and mental impairments, including herniated discs and migraines. Transcript ("Tr.") 12, 106-10, 204. Plaintiff's claim was denied initially on December 20, 2019, and again on reconsideration on March 6, 2020, after which she requested an administrative hearing. Tr. 12. On December 17,

2020, Administrative Law Judge Mary Mattimore ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Joseph Paladino, an attorney. *Id*. Celena Earl, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on January 4, 2021, finding that Plaintiff was not disabled. Tr. 9-32. On March 5, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's January 4, 2021 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 12.

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

3

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her January 4, 2021 decision:

1. The claimant has not engaged in substantial gainful activity since August 19, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: lumbar disc herniation, lumbosacral spondylolisthesis, cervical disc protrusion/bulging disc, migraine headaches, and myofascial pain disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[2] except the claimant could occasionally push, pull and reach overhead bilaterally; occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps; never climb ladders, ropes, or scaffolds. The claimant could have no exposure to bright flashing flickering lights. She can work in a moderate noise-level environment, as defined in Appendix D of *The Selected Characteristics of Occupations*. The claimant should avoid concentrated exposure to vibration, fumes, odors, dust, gases, and other pulmonary irritants. She can perform simple routine work and make simple workplace decisions not at a production rate pace (*e.g.*, assembly line pace). The claimant can tolerate minimal changes in workplace processes and settings. The claimant can tolerate frequent interaction with supervisors, coworkers, and the public.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on January 11, 1984 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 12-27.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on August 19, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 27.

## <u>ANALYSIS</u>

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ did not adequately account for Plaintiff's migraines in the RFC finding. *See* ECF No. 7-1 at 1, 8-12. Plaintiff alleges that the ALJ improperly rejected Plaintiff's subjective complaints of pain and limitations related to her migraines. *Id*. Specifically, Plaintiff argues that the ALJ did not credit her testimony that she needed to retreat to a dark, quiet room during migraine headaches, which, according to Plaintiff, warranted an off-task time limitation. *Id*.

The Commissioner argues in response that the ALJ fully considered Plaintiff's allegations regarding her migraine-related limitations, and substantial evidence supports the ALJ's RFC finding, including the limitations related to Plaintiff's migraines, which the ALJ clearly explained. *See* ECF No. 9-1 at 6-11. Furthermore, argues the Commissioner, Plaintiff did not meet her burden to demonstrate that an off-task time limitation was required in the RFC. *Id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ provided a thorough and detailed discussion of the record evidence, including the opinion evidence, Plaintiff's treatment records, and her statements about her symptoms and daily activities, and the ALJ's RFC finding was supported by substantial evidence. In reaching her conclusion, the ALJ adequately considered Plaintiff's migraine headaches and properly included limitations consistent with the credibly supported evidence in the record. Accordingly, the Court finds no error.

Plaintiff testified that she is currently unable to work because of her mental impairments, and her neck and lumbar impairments. Tr. 42. On November 21, 2018, Plaintiff was treated at DENT Neurologic Institute ("DENT"), for headache follow-up and trigger point injections. Tr. 374. Plaintiff reported that she was experiencing at least 15 headache days per month with at least eight "being migrainous in nature" and lasting more than four hours. *Id*. It was noted that previous trigger point injections had decreased her headache frequency and cervicalgia, as well as improved her shoulder tension; and her current medications were "working well in further reducing headaches." *Id*.

On December 28, 2018, Plaintiff was treated at DENT for headache follow-up and Botox injections. Tr. 371-73. She received her first round of Botox without complication and was to return in 12 weeks for another round. Tr. 372. Results of an October 2018 MRI of the brain were reviewed and noted to show a few T2 hyperintense foci subcortically in the left frontal lobe white matter, a result "often seen in migraine patients as well as after head trauma." Tr. 375. Plaintiff "also had mucosal thickening and inflammatory changes in her sinuses" and "an incidentally noted small retrocerebellar arachnoid cyst." *Id*.

In February 2019, Plaintiff saw Romanth Waghmarae, M.D. ("Dr. Waghmarae"), at Advanced Pain and Wellness Institute, for low back pain. Tr. 302. Plaintiff rated her pain as "3-5 [out of] 10." Tr. 304. Plaintiff reported her treatment history, including facet injections, which gave her 100% relief for two weeks; using a TENS unit; chiropractic treatments that gave her short-term relief; and physical therapy that did not help her symptoms. *Id.* She stated that she did "not want to consider surgery." *Id.* Plaintiff's mental status examination was normal. *Id.* Upon physical examination, she exhibited normal motor strength and muscle tone; normal lower extremity reflexes; and negative seated straight leg raise ("SLR") testing bilaterally at 90 degrees. Tr. 305. Plaintiff reported no tenderness in the bilateral lumbar facets at L5-S1 and had no motor strength deficiencies. *Id.* Plaintiff requested a "handicapped sticker," but Dr. Waghmarae stated "she [did] not meet the criteria, as she has a good exam and no assistive devices are used." *Id.* Plaintiff was encouraged to stretch, participate in a home exercise program, and return to chiropractic treatments, which had been successful in the past. *Id.*

On April 24, 2019, Plaintiff saw primary care physician Patrick Glasgow, M.D. ("Dr. Glasgow"), requesting completion of disability forms. Tr. 317-321. According to Plaintiff, her psychiatrist and neurosurgeon had already filled out the forms, but they wanted "corroboration" from Dr. Glasgow. Tr. 317. Plaintiff's examination findings were unremarkable, with normal gait and station; normal joints, bones and muscles; and normal mood and affect. Tr. 320. Dr. Glasgow advised Plaintiff that "given her current presentation, there is felt to be insufficient clinical evidence or supporting documentation at this time to justify her disability claim." *Id.* He asked that Plaintiff's specialists forward their most recent treatment notes for review, and he would reevaluate her request at that time. *Id.*

On June 17, 2019, Plaintiff was seen by rehabilitation physiatrist Amrit Singh, M.D. ("Dr. Singh"), at Erie County Medical Center ("ECMC"), for ongoing low back pain and neck pain. Tr. 335-37. Plaintiff reported a pain level between three and five out of ten. Tr. 336. Dr. Singh noted that radiofrequency ablation performed by Dr. Waghmarae in April 2019 had decreased her low back pain. Tr. 335. Dr. Singh also noted that Plaintiff had seen neurosurgeon Dr. Jeffrey Lewis but was reluctant to have surgery and had not scheduled any additional follow-up with him. *Id*. Dr. Singh further noted that Plaintiff lived in an upstairs apartment; she was able to do activities of daily living "with some difficulty;" and she was planning to return to work as a resident care aide for patients with Alzheimer's. *Id*.

Upon examination, Plaintiff's gait and station were normal; there were no obvious deficits of coordination; and her extremity temperature was normal. Tr. 336. Trendelenburg's test was negative bilaterally; she was able to stand and walk on her heels and toes; and SLR test was unchanged at 65 degrees bilaterally. *Id*. She reported mild to moderate discomfort in the lower back without significant radiation into the legs; Faber's test and hip rotation produced mild discomfort in the lower back bilaterally; and she reported moderate tenderness over the lower lumbar spine and lumbar paraspinal and both sacroiliac joints. *Id*. Motor power in the lower extremities was within normal limits and similar bilaterally; she did "not have objective sensory deficits in the lower extremities;" deep tendon reflexes were 2+ and symmetric at the knees and ankles; and she had mild divarication of the rectus abdominis muscles. *Id*. She reported a pulling sensation at the extremes of range of motion of the cervical spine and moderate discomfort was noted in the neck with Spurling's maneuver without radiation to the upper extremities. *Id*. There was moderate tenderness over the mid and lower cervical spinous processes and mild spasm and tenderness of the cervical and shoulder girdle muscles. *Id*. Upper extremities were normal with

pain-free range of motion of both shoulders; no atrophy in the muscles; normal motor power bilaterally; no objective sensory deficits; and deep tendon reflexes were 2+ and symmetric at the biceps, brachioradialis, and triceps. *Id*.

Dr. Singh also reviewed Plaintiff's lumbar MRI from September 2017 and her cervical MRI from June 2017. Tr. 336. He noted that the lumbar MRI confirmed minimal posterior bulge at the L4-5 disc level with a posterior annular tear, disc desiccation, and 4 mm broad-based posterior herniation at the L5-S1 disc level minimally effacing the traversing S1 nerve roots; and the cervical MRI revealed a mild bulge of the annulus at C5-C6 with mild narrowing of the left neural foramen due to hypertrophic uncovertebral joint changes. *Id*.

Dr. Singh diagnosed neck and low back pain with cervical and lumbar degenerative disc changes, sacroiliac joint dysfunction and secondary myofascial pain. Tr. 337. He stated that Plaintiff may need radiofrequency ablation performed again in 4-6 months. *Id*. Dr. Singh noted Plaintiff's slight decrease in neck pain symptoms with a significant decrease in the frequency of migraine headaches with Botox injections. *Id*. Dr. Singh also noted that, because Plaintiff was unable to continue with physical therapy due to transportation issues, she should continue with a home exercise program including stretches and abdominal muscle strengthening exercises, as well as taking precautions during activities of daily living to reduce the frequency of flare-ups. *Id*.

On September 16, 2019, Plaintiff returned to DENT for Botox therapy for her chronic migraine headaches. Tr. 741. She reported a 95% decrease in her headaches since starting Botox therapy. *Id*.

On September 18, 2019, Plaintiff saw Dr. Singh for follow-up treatment of low back and neck pain. Tr. 712. She had received Botox injections at DENT the previous day. *Id*. She had pain on the posterior aspect of the neck at the level of the vertebra prominens and intermittent pruritic

sensation at the base of the neck. *Id*. Dr. Singh noted that Plaintiff's low back symptoms remained somewhat better following radiofrequency ablation performed by Dr. Waghmarae. *Id*. Tr. 712, 714. Her physical examination was unchanged since the previous visit. Tr. 713. Dr. Singh indicated that radiofrequency ablation may need to be repeated if her symptoms increased. Tr. 714. He also advised Plaintiff to continue with her home exercise program and reviewed stretches and exercises with her, as well as wrote a referral for chiropractic treatment, which he noted had been beneficial in the past. *Id*.

On October 28, 2019, Plaintiff saw Nikita Dave, M.D. ("Dr. Dave"), for an internal medicine consultative examination. Tr. 723-27. Plaintiff's chief complaints included migraine headaches, neck pain, low back pain, and a reported seizure that occurred in February 2019. Tr. 723-24. Plaintiff reported that she was able to shower and dress four times per week; bathe twice each week; and she enjoyed television, friends, radio, and reading. Tr. 724. Upon examination, Plaintiff's gait and stance were normal; she was able to walk on heels and toes without difficulty; and she performed three-fourths of a squat. Tr. 724-25. She needed no help changing for the exam or getting on and off exam table; and she was able to rise from her chair without difficulty. Tr. 725. On musculoskeletal examination, Plaintiff had full range of motion throughout the cervical spine; and her lumbar spine showed flexion 70 degrees, full extension, lateral flexion 10 to 15 degrees bilaterally, and rotary movement 25 degrees bilaterally with no tenderness. *Id*. SLR testing was negative bilaterally; she had full range of motion of her upper and lower extremities; stable and nontender joints with no redness, heat, swelling, or effusion; and full (5/5) strength in her upper and lower extremities. Tr. 725.

Dr. Dave reviewed Plaintiff's lumbar x-ray, which revealed normal mineralization without evidence of a compression fracture, well maintained intervertebral disc spaces, intact pedicles, and

normal lumbar lordosis. Tr. 728. Plaintiff's cervical x-ray showed normal mineralization without evidence of a compression fracture, mild intervertebral disc space narrowing, and small endplate osteophyte formation at the C5-C7 levels; the remainder of the intervertebral disc spaces were well maintained; facets and spinous processes were unremarkable; and there was straightening of the normal cervical lordosis. Tr. 729.

Dr. Dave diagnosed neck pain, low back pain, headaches, seizure (2019), ulcerative colitis (stable), status-post hysterectomy, dyslipidemia, and hypothyroidism. Tr. 726. Dr. Dave opined that Plaintiff "should avoid driving, sharp equipment, machinery, ladders, and unprotected heights due to history of recent seizure," although he noted that Plaintiff was not currently taking any anti-epileptic medications. *Id*. Dr. Dave further opined that "[w]ith regard to the cervical and lumbar spine, there may be "mild limitations for prolonged standing, heavy lifting, and carrying." *Id*.

On December 2, 2019, Plaintiff saw Jeffrey Lewis, M.D. ("Dr. Lewis"), at Buffalo Neurosurgery. Tr. 921. Dr. Lewis noted that Plaintiff had known retrolisthesis at L5-S1 with a known lumbar disc herniation and a known bulging disc at C5-6. *Id*. She complained of significant back pain with no real benefit in any conservative treatment. *Id*. She continued to have posterior headaches and significant migraines. *Id*. On physical examination, Plaintiff had palpable muscle spasms through the trapezius muscle and mildly restricted lumbar range of motion. Tr. 922. Dr. Lewis ordered new imaging studies, and Plaintiff was to return after those were completed. *Id*.

On December 9, 2019, Plaintiff returned to DENT for Botox injections. Tr. 738. She reported her headaches had seen a 45-50% decrease; and she still had about 11 migraines per month, but they were more easily treated. *Id*. She also reported that Botox "significantly helped her." *Id*. The record reflects that Plaintiff continued receiving Botox injections at DENT.  On March 2, 2020, and June 4, 2020, Plaintiff reported a 75% decrease in her headache days with

Botox. Tr. 939, 936. On September 29, 2020, Plaintiff reported a 50% decrease in her headache days. Tr. 934. She also reported that abortive treatment was still reliable. *Id*. She had noticed worsening of her memory with topiramate; and the extended-release version was recommended to help with this. *Id*.

On December 20, 2019, state agency review consultant V. Baronos, M.D. ("Dr. Baronos"), opined that Plaintiff could perform light work. Tr. 81-82. On reconsideration on March 2, 2020, state agency review consultant C. Krist, D.O. ("Dr. Krist"), opined the same, but added limitations to avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, and poor ventilation. Tr. 96-98.

Plaintiff's February 2020 annual physical examination revealed entirely normal findings. Tr. 1048. It was noted that her headaches were well controlled with medication, and she was to continue follow up with Dr. Singh and Dr. Lewis for her neck and back pain. *Id*.

On October 12, 2020, Plaintiff had a telephonic visit with Dr. Singh due to the COVID pandemic. Tr. 1012-14. She reported persistent back and neck pain. Tr. 1012. Dr. Singh again noted that, although Plaintiff had undergone a surgical consultation, she was "reluctant to have surgery" as facet injections had provided significant relief. *Id*. A physical examination could not be performed under the circumstances. Tr. 1012, 1013. However, Dr. Singh noted that an MRI of the lumbar spine conducted on January 3, 2020 showed a posterior annular tear at L5-S1 with slight worsening of a 5mm diffuse posterior protrusion mildly indenting the ventral thecal sac with mild disc desiccation with patent neural foramina. Tr. 1013. Plaintiff's cervical x-ray showed subtle grade I anterior spondylolisthesis of C4 and C5 anterolisthesis degree of C3 over C4 and subtle retrolisthesis of C3 over C4 and C2 over C3. *Id*.

Dr. Singh noted that Plaintiff had benefited from chiropractic treatment and radiofrequency ablation with Dr. Waghmarae; however, her chiropractic clinic had closed due to the pandemic, and she continued to have difficulty obtaining a follow-up appointment with Dr. Waghmarae, Tr. 1014. She also had not been able to continue physical therapy due to transportation issues. *Id*. She was advised to continue with her home exercises and to take precautions during activities of daily living to reduce the frequency of flare-ups. *Id*.

Plaintiff argues that the ALJ did not adequately account for Plaintiff's migraines in the RFC and improperly rejected Plaintiff's subjective complaints of pain and limitations related to her migraines. *See* ECF No. 7-1 at 1, 8-12. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed her application on August 19, 2019, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she

considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

As noted above, the ALJ limited Plaintiff to avoiding concentrated exposure to pulmonary irritants, loud noise, and bright, flashing, or flickering lights due to migraines. Tr. 24. In addition, the ALJ noted that the RFC limitation to performing simple work and simple decision making was due, in part, to Plaintiff's migraine headaches. *Id*. Contrary to Plaintiff's challenges to the RFC finding, the ALJ's decision indicates that she relied on multiple evidentiary sources, including Plaintiff's treatment notes and the medical opinion evidence, to make an RFC finding that reasonably accounted for limitations due to Plaintiff's migraines. Tr. 19-25.  *See* 20 C.F.R. §§ 404.1527, 416.927.

For instance, the ALJ noted that, as of November 2018, Plaintiff reported to her provider at DENT that she had two or three migraines per week (Tr. 374), but in June 2019, Plaintiff reported "significant improvement" in migraines after starting Botox in late 2018 (Tr. 366). Tr. 23. In December 2019, Plaintiff reported having approximately 11 migraines in a month, but they were "more easily treated." Tr. 738. The ALJ also noted that Plaintiff reported a 75% decrease in headache days per month in March and June 2020 due to Botox treatments. Tr. 23, 936, 939. At her neurology appointment in September 2020, Plaintiff reported her migraines had decreased 50% and abortive treatment was still reliable. Tr. 23, 934. Thus, the ALJ properly considered Plaintiff's treatment notes to formulate the RFC assessment. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence

from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

As for opinion evidence, Dr. Krist was the only opinion that assessed any limitations due to migraines. Tr. 96-98. Dr. Krist indicated that Plaintiff should avoid concentrated exposure to noise, vibration, and respiratory irritants due to migraines. *Id*. The ALJ found Dr. Krist's March 2020 assessment "more persuasive and encompassing" than other opinions in accounting for Plaintiff's back and neck impairments, as well as her headaches, and it was consistent with the evidence of record. Tr. 24. Notably, however, the ALJ also included additional limitations for bright, flashing, flickering lights, and simple work and decision making. Tr. 19, 24. Thus, the ALJ's RFC is more limiting than Dr. Krist's opinion. *See Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand."). As previously noted, the RFC need not perfectly correspond with any opinion; instead, the ALJ must consider all of the evidence and make a finding consistent with the evidence as a whole. *Matta*, 508 F. App'x at 56. Here, Dr. Krist's opinion, as well as the treatment notes referenced above, support the RFC limitations involving the level of light, noise, vibration, and pulmonary irritants.

Furthermore, contrary to Plaintiff's contentions (*see* ECF No. 7-1 at 9-11), the decision indicates that the ALJ did consider Plaintiff's subjective complaints about her migraine symptoms, even if those complaints were not incorporated into the RFC. For example, the ALJ discussed Plaintiff's testimony that she had difficulties moving her head side-to-side and needed to keep her head straight to avoid headaches; that she had three to four migraines per week, lasting all day and causing vomiting; her migraines led to a sensitivity of light and sound; migraines, along with

general pain, impacted her concentration; and Botox treatments gave her little relief. Tr. 20, 44-45, 52-55. The ALJ accordingly included a limitation that Plaintiff should avoid concentrated exposure to pulmonary irritants, loud noise, and bright, flashing or flickering lights. Tr. 24. Thus, Plaintiff's allegations of limitations were considered, even if not all were credited by the ALJ.

Plaintiff also asserts that, based on her testimony, the ALJ should have included limitations to account for absenteeism or off-task time in the RFC finding. *See* ECF No. 7-1 at 9-10. While an ALJ must take Plaintiff's claims into account, the ALJ need not accept subjective complaints without question. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ exercises discretion in weighing the consistency of Plaintiff's allegations in light of the other evidence in the record. *Id*. Great deference should be given the ALJ's judgment because she heard the witness testify and observed his demeanor. *Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); *Serra v. Sullivan*, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991). Accordingly, review of an ALJ's subjective symptom evaluation is limited to determining whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2012) (Because it is the function of the Commissioner and not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, the Court will defer to the ALJ's determination as long as it is supported by substantial evidence).

Contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's testimony in determining the RFC. Tr. 20-25. Despite Plaintiff's testimony regarding three to four migraines per week (Tr. 53), the ALJ noted that Plaintiff reported that, even before Botox treatment, she had two to three migraines per week; she also reported up to 75% decrease in headache days per month during the relevant period; and abortive treatment for migraines was still reliable in September

2020. Tr. 20, 23, 374, 934, 936, 939. Furthermore, no opinion evidence or other evidence indicates that limitations regarding absences or off-task time are required for migraines. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say." As such, the ALJ reasonably did not include limitations regarding absences or off-task time in the RFC.

Plaintiff's claim that the RFC should have included limitations in moving her head and neck because this movement triggered headaches fails for similar reasons. *See* ECF No. 7-1 10-11. Again, such complaints are not reflected in Plaintiff's neurology treatment records from the relevant period. *See* Tr. 738, 934, 936, 939. Moreover, the ALJ did evaluate and discuss Plaintiff's cervical spine issues in the RFC. Tr. 21-23. Thus, the ALJ properly considered Plaintiff's subjective complaints in light of the record as a whole and reasonably accounted for her migraines by crafting in the RFC for a range of light work with the limitations noted above. Here, Plaintiff did not meet her burden to demonstrate that absences or off-task time was required in the RFC, or to show that specific movements of the head or neck should have been further limited in the RFC. *See Poupore*, 566 F.3d at 306.

Plaintiff also contends that the decision did not appropriately discuss the reasons for not including alleged limitations in the RFC. *See* ECF No. 7-1 at 9. However, when "the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). As discussed above, the evidence of record supports the RFC as related to migraines, and the rationale provided for the RFC

determination is appropriate even if the reason for not finding every alleged limitation persuasive is not explicitly discussed.

As previously noted, Plaintiff bears the ultimate burden of proving that she was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Valentin v. Comm'r of Soc. Sec.*, 820 F. App'x 71, 713 (2d Cir. 2020) ("Valentin does not identify any evidence supporting a more limited RFC."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE